**Ronnie DUDLEY et al., Appellants,**

**v.**

**Gene Anthony WHATLEY et al., Appellees.**

**No. 14676.**

Court of Civil Appeals of Texas.

Houston.

March 3, 1966.

Rehearing Denied March 24, 1966.

Max H. Jennings, Clawson, Jennings & Clawson, R. Philip Schulze, Houston, for appellants.

James F. Bobbitt, Bobbitt & Kraft, Houston, Thad W. Davis, Freeport, Raymond L. McDermott and Mabel Grey Howell, Houston, for appellees.

COLEMAN, Justice.

This is a suit to recover damages by reason of personal injuries sustained in an automobile accident. The principal points to be discussed concern claimed errors on the part of the trial court (1) in refusing requested special issues as to proper look-out on the part of appellee Whatley, who was a passenger in his own automobile; and (2) in wording certain special issues submitted in such manner as to constitute a comment on the weight of the evidence.

Prior to the collision from which this suit arose, appellee Fregia was driving appellee Whatley's new automobile on Highway 288 from Freeport toward Angleton. Whatley was riding in the front seat and Thompson in the back seat. The highway is a four-lane concrete highway with asphalt shoulders divided by an esplanade. At the point where County Road 220 intersects the highway from the west, there is a break in the esplanade through which vehicles may enter the northbound lanes of the highway.

On Sunday, July 9, 1962, as appellees were south of and nearing this intersection at a time between 7:00 and 7:40 p. m., appellant Ronnie Dudley, according to his testimony, approached this intersection on the county road and stopped. He checked the traffic, saw the Whatley car 650 to 700 feet south of the intersection, and then drove across the southbound lanes of the

highway. He then crossed the break in the esplanade, looked south and saw the Whatley car 400 to 500 feet away, and turned north into the *inside* northbound lane. After he had proceeded about 200 to 250 feet without again looking at the Whatley car, he was struck from the rear. There is testimony that the force of the collision was such that Dudley struck the steering wheel; his glasses were thrown onto the ledge in the back of his car; the locked trunk on his automobile opened and the bolted spare tire therein was torn loose and was found in a field on the western side of the highway; the automobile was badly damaged across the rear, especially on the left; the frame was bent down over the rear wheels and was buckled.

Appellees testified that they were proceeding in the outside lane of the highway at a speed of 55 to 60 miles per hour as the car approached the intersection. Appellees and Thompson testified that they saw Dudley as he entered the intersection. He was driving 10 to 15 miles per hour and turned into the *outside* lane when they were 150 to 200 feet south of the intersection in that same lane. They testified that Fregia then turned into the inside lane to pass Dudley, and as they were about to pass Dudley turned left into the inside lane in front of them.

There was a difference of opinion among the witnesses as to the length of the skid marks made by the Whatley car, and the exact point of collision. There was agreement that the collision occurred more than 50 feet north of the intersection in the inside lane and that the Whatley car laid down more than 95 feet of heavy skid marks, beginning about the middle of the intersection, all in the inside lane.

Based on jury findings of negligence on the part of Dudley and no contributory negligence, the court entered judgment in favor of Whatley for his damages. There was a stipulation that all negligent acts on the part of the driver, Fregia, would be imputed to the owner, Whatley.

Appellants requested the trial court to submit Special Issue "A" worded as follows:

"Do you find from a preponderance of the evidence that just before and at the time of the accident in question Gene Whatley failed to keep such a lookout for vehicles on the highway ahead of his vehicle as would have been kept by a person of ordinary prudence, in the exercise of ordinary care, under the same or similar circumstances?"

Ordinarily a passenger, not being in charge of the operation of the automobile, is not required constantly to keep a lookout. He may rely on the driver to keep watch unless he knows from past experience or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless. In addition if the passenger knows that a particular point there will be a peculiar danger, which he has no reason to believe that the driver, if unaided, will perceive, he may be guilty of negligence, if he does not keep himself in a position to call the danger to the attention of the driver. Edmiston v. Texas & N. O. R. Co., Com. App.1940, 135 Tex. 67, 138 S.W.2d 526, opinion adopted; Schumacher Co. v. Shooter, Com.App.1939, 132 Tex. 560, 124 S.W.2d 857, opinion adopted.

There was no such exceptional circumstance shown as would raise a duty on the part of Whatley to keep a lookout. There is no evidence that Fregia was not a competent driver, or was handicapped in any manner. The car was being driven on a wide, straight highway on a clear, dry day. No other cars were in the vicinity. While an inference of excessive speed might have been drawn from the evidence, and there was opinion testimony that the Whatley car was being driven from 60 to 75 miles per hour, Whatley testified to a speed of 50 to 55 miles per hour. While a jury was not required to accept this testimony, there was no other testimony from which it could

be determined that Whatley knew the speed of the automobile.

In the Edmiston case, supra, the court approved as a correct declaration of the law a quotation from the Restatement of the Law of Torts (Vol. 2, pp. 1282, 1283, section 495) in which this statement appears:

" 'So too, the plaintiff is not required to keep his eyes constantly on the speedometer to see whether the driver is exceeding the legal speed limit. He is required to call the attention of the driver to his excessive speed only when the speed is so great that a reasonable man would realize its excessive character.' "

■ An inference of improper lookout on the part of a passenger cannot be drawn from the fact of a collision. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195; Schumacher Co. v. Shooter, Com. App.1939, 132 Tex. 560, 124 S.W.2d 857, opinion adopted.

■ Taking into account Ronnie Dudley's testimony that the Whatley car was 650 to 700 feet from the intersection when he first looked south and only 400 to 500 feet from the intersection when he pulled into the southbound lanes, and considering the number of feet a car would travel at a speed between 50 and 70 miles per hour, the slow speed of the Dudley car, it is apparent that not more than five or six seconds could have elapsed from the time that danger might have been anticipated and the time Fregia applied the brakes on the car he was driving. Under the existing conditions and circumstances, there is no evidence of probative force that Whatley failed to keep the lookout required of a passenger in a motor vehicle.

Appellants complain of the language by which Special Issues 19 through 24 were submitted since it reveals that the trial court necessarily assumed Dudley was traveling in the outside northbound lane of Highway 288 after he entered this highway. The position of the Dudley car on the highway was a controverted issue of fact. Appellant objected to the charge on the ground that the issue as proposed constituted a comment on the weight of the evidence.

Special Issue No. 19 reads:

"Do you find from a preponderance of the evidence that just before the collision Ronnie Dudley turned the Comet automobile from a direct course or moved left upon the roadway of Highway 288?"

Appellees contend that the points of error complaining of these issues have not been preserved properly since the assignments of error in appellants' motion for new trial pertinent to each of these issues are identical (with the exception of the number of the issue) and read:

"The trial court erred in overruling Plaintiff's and Cross-Defendants' exceptions and objections to Special Issue No. 19." Appellees point out that since a number of objections were made to each of the issues, the assignment is legally insufficient to justify the consideration of a point of error based thereon.

■ There was not such substantial compliance with Rules 320, 321 and 322, Texas Rules of Civil Procedure, as to justify the consideration of these points by this Court. The matter claimed to constitute error was not distinctly pointed out to the trial court. Rule 374, T.R.C.P., provides that a ground of error not distinctly set forth in the motion for new trial shall be considered as waived. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887.

■ Even if we should consider that the trial court erred in improperly commenting on the evidence in assuming that the Dudley car entered Highway 288 in the outside northbound lane, the error would not require reversal. The jury found that Ronnie Dudley failed to keep a proper lookout, which was a proximate cause of the collision, and also that he failed to yield the right-of-way, which was a proximate cause

of the collision. In view of the instructions given in the charge by the trial court, this was a finding that Ronnie Dudley entered Highway 288 at a time when another vehicle was approaching the intersection so closely on said highway as to constitute an immediate hazard. It does not appear that an improper comment by the trial court on the position of the Dudley car after it had entered the intersection and had made the turn, would be calculated to affect the answer made by the jury to the issues on lookout or right-of-way. The error, if any, is harmless since the judgment is supported by the answers made by the jury to these special issues convicting Ronnie Dudley of negligence constituting a proximate cause of the collision, and no points of error are presently attacking these issues. Galveston, H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; Brakefield v. Anderson, Tex.Civ.App., 1965, 394 S.W.2d 529.

Appellants' final points of error are concerned with the sufficiency of the evidence to support the $25,000.00 award for past and future physical pain, past and future mental anguish, loss of earnings and physical impairment from July 9, 1962 to the date of trial (February 22, 1965) and reasonable present cash value of such loss of earning capacity and physical impairment which Whatley will in reasonable probability sustain in the future. The jury found $82.50 medical expense to the date of trial and $1,100.00 future medical expense.

Whatley was 29 years of age at the time of the trial. He testified that he was in a dazed condition immediately after the collision and had pain in his neck. He was employed by Dow Chemical Company at the time of the accident and continued in their employ until either February or March, 1964, when he resigned after having been given the option of resigning or being fired. This action was taken because of the injuries received in the collision. Prior to resigning he had lost a total of about two weeks' work aside from his sick leave and had lost $1,400.00 to $1,600.00 because of his inability to do overtime work. After the accident he did light duty work training men for his department. Prior to his employment for Dow he had worked for an uncle, who was a contractor, but he did heavy work. Since leaving Dow he has moved to Alabama and is doing contracting, but he only gets jobs and then obtains sub-contracts. He does not do heavy work. During the month before the trial he made $200.00. In 1962 he made $9,800.00, and in 1963, $8,300.00.

He testified to pain in his neck and numbness in an arm, which was intermittent. He used a neck brace and a traction device. He was treated by Dr. Baker, a chiropractor, Dr. Gaulke, Dr. Greenwood, and Dr. Zieman. There was no medical testimony offered by appellants concerning Mr. Whatley's condition. Only Dr. Baker testified at the trial. He found nerve impingement in the cervical spine and that the first and fifth cervical vertebra had slipped out of their normal positions. It was his opinion that Mr. Whatley had a permanent disability of from 20 to 30 per cent, and that the type of work he could do would be limited because he could not do heavy work. He expected that Mr. Whatley would have pain in the neck and shoulder from time to time. Considering all of the testimony, we are unable to say that the verdict of the jury was contrary to the weight and preponderance of the evidence, or that the judgment based thereon is excessive.

The judgment of the trial court is affirmed.