946 F.2d 811
 1993 A.M.C. 2400
 David WEISSMAN, individually and as Personal Representative
of Estate of Edith Weissman, Deceased, Plaintiff,
v.
BOATING MAGAZINE, et al., Defendant.
CBS, INC., and Douglas Schryver, Defendants-Third Party
Plaintiffs-Appellants,
v.
Richard SIMON and Tempest Marine, Inc., Third Party
Defendants-Appellees.
 No. 90-5286.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 5, 1991.
 
 G. Morton Good, Miami, Fla., for defendants-third party plaintiffs-appellants.
 Ralph O. Anderson, Miami, Fla., for third party defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.
 RONEY, Senior Circuit Judge:
 
 
 1
 This action arose as a result of a collision between two vessels in the intracoastal waterway near Miami, Florida. A thirty-eight foot powerboat was being demonstrated and tested for the editor of a boating magazine. The boat overtook and collided with a smaller twenty-one foot boat, killing two passengers and injuring others. The injured occupants of the smaller boat sued the boating magazine and its editor. After settling the lawsuit, the magazine and its editor sought indemnification from the owner and operator of the powerboat. They argued that their liability was derivative or vicarious for the negligence of the owner and operator. The district court denied relief by entering a summary judgment for the owner and operator defendants. The district court held that the plaintiff editor was a joint tortfeasor whose own negligence contributed to the accident, thus depriving them of the right of indemnification against their joint tortfeasor. We affirm on the ground that the third-party plaintiffs settled a potential liability for their own active negligence and, therefore, are not entitled to indemnification.
 
 
 2
 The accident occurred when the thirty-eight foot Tempest powerboat ("Tempest 38") operated by Richard Simon, Chairman of the Board of Tempest Marine, Inc. ("Tempest"), overtook and collided with the twenty-one foot Regal powerboat ("Regal 21") in a narrow part of the Intracoastal Waterway, in North Miami, Florida. Douglas Schryver, Executive Editor of "Boating Magazine," a publication owned by CBS, Inc. ("CBS"), was aboard the Tempest 38 to direct the testing and evaluation of the boat and to gather data for a possible upcoming article in "Boating Magazine."
 
 
 3
 Schryver's intended evaluation was to include objective tests measuring fuel consumption, speed, inclinometer, and sound levels. All of these tests were to be completed at 500 RPM increments, ranging from a level of 1500 RPMs up to approximately 5500 RPMs. Schryver brought with him the appropriate instruments to conduct the tests.
 
 
 4
 Under Schryver's direction, the first three objective tests were completed without incident. The final objective test, the sound level test, was designed to measure the amount of noise at the helm station of the boat while traveling at different speeds. Schryver positioned himself at approximately the center line of the boat, outside of the safety bolster and just to the left of the helm where Simon was located. He stood in this position so that he could hold the decibel-meter close to the helm in order to receive the best readings. When the Tempest 38 reached 5000 RPMs, Schryver instructed Simon to "put the throttles to the wall." Simon complied and then monitored the boat's two tachometers to ensure that the twin engines were synchronized, as Schryver had requested they be during each of the tests.
 
 
 5
 About this time both Simon and Schryver noticed the ill-fated Regal 21 approximately 200-300 yards away. In an effort to avoid the other vessel without disrupting the last stage of Schryver's final objective test, Simon attempted to pass the Regal 21 without reducing speed. During this time Schryver did not warn, gesture, or otherwise indicate that Simon should reduce the boat's speed, change course, or take any other corrective action to avoid the collision. Simon's attempts to avoid the smaller boat were unsuccessful. The Tempest 38 passed completely over the Regal 21 at a speed of between 40 to 55 miles per hour, causing serious injury to David Weissman and the death of his wife and stepdaughter.
 
 
 6
 Before any litigation, Tempest, Simon, and Adam Erdberg, the President and Chief Engineer of Tempest who was also on the boat, settled the claims of parties aboard the Regal 21 for $1,650,000. Weissman then sued CBS and Schryver alleging that (1) they were engaged in a joint venture with Tempest, (2) Simon was the borrowed servant of CBS, and (3) Schryver was actively negligent in planning and directing the manner of testing. CBS and Schryver settled that lawsuit for $375,000, without any allocation as to which of the claims were being settled. They then sought indemnification against Tempest and Simon in this third-party suit.
 
 
 7
 The district court granted Simon and Tempest's Motions for Summary Judgment, concluding that "Simon was operating the vessel with the assistance of Schryver, and that they were joint tortfeasors, both of whom owed a duty to the plaintiff." A person who is directly liable for his own negligence is not entitled to indemnity from a joint tortfeasor. Seaboard Coast Line R.R. Co. v. Smith, 359 So.2d 427 (Fla.1978). Even though there also may be some vicarious, constructive, derivative, or technical liability, the active negligence or fault defeats an indemnity action. There is no apportionment between the two theories of liability.
 
 
 8
 A weighing of the relative fault of tortfeasors has no place in the concept of indemnity for one seeking indemnity must be without fault ... when determining whether a party is entitled to indemnity, we will not weigh the relative fault of the parties, but rather we will look to the party seeking indemnity to determine whether he is without fault.
 
 
 9
 Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 493 (Fla.1979) (citations omitted).
 
 
 10
 Defendants assert in their brief, without contradiction by the appellants, that CBS and Schryver "conceded in the district court that in order to prevail on their indemnity claim they would have to prove that (1) their only potential liability to Weissman was on a purely vicarious basis pursuant to Weissman's joint venture or borrowed servant theories; and (2) that they had no potential liability on a direct fault basis."
 
 
 11
 Although no cases exactly in point have been cited, claims for indemnity under the circumstances here are considered in terms of potential liability. If, before settlement is concluded, the indemnitor is offered a choice between approving the settlement or taking over the defense of the claim, and refuses to do either, the indemnitee can recover by showing potential liability to the original plaintiffs, and need not prove actual liability. Parfait v. Jahncke Serv., Inc., 484 F.2d 296, 304-05 (5th Cir.1973).
 
 
 12
 [A] settling indemnitee can recover from an indemnitor upon proof of the indemnitee's potential liability if the settlement terms are reasonable and if the indemnitor has notice of the suit, has notice of the settlement terms, and has failed to object to those terms even though he has had a reasonable opportunity to approve or disapprove the settlement.
 
 
 13
 Burke v. Ripp, 619 F.2d 354, 360 (5th Cir 1980) (Goldberg, J., concurring).
 
 
 14
 We have not required proof of actual liability where an indemnitee informs the indemnitor of a proposed settlement and the indemnitor fails to object.... In contrast when the indemnitee has not given the indemnitor an opportunity to review, pass upon, or participate in a settlement, due process and 'equitable indemnity principles' compel a demonstration of actual as opposed to potential liability.
 
 
 15
 GAB Business Servs., Inc. v. Syndicate 627, 809 F.2d 755 (11th Cir.1987) (citations omitted). In this case, prior to settlement, CBS and Schryver gave Tempest and Simon written notice of the contemplated settlement and the opportunity to assume and take over the defense, which offer was declined.
 
 
 16
 Thus, to recover on the theory of vicarious liability, CBS and Schryver would have to prove only that they settled a potential liability. But they would not be able to recover for any settlement of a potential, direct liability claim. Therefore, since the law does not permit apportionment of indemnitee claims, they would have to show that no portion of the amount paid in settlement was paid for the potential liability of active negligence.
 
 
 17
 Of course, there would be no potential liability for active negligence if Schryver owed no duty of care to the occupants of the Regal 21. It is a question of law for the court to determine whether there is a duty of care owed by one party to another in a negligence action. Spurlin v. General Motors Corp., 528 F.2d 612, 615 (5th Cir.1976); Fugate v. Gavin, 84 Ill.App.3d 573, 40 Ill.Dec. 318, 319, 406 N.E.2d 19, 20 (1980). As a general rule, a passenger has no duty to keep a lookout on behalf of the operator of the vehicle. Dudley v. Whatley, 400 S.W.2d 773, 775 (Tex.Civ.App.1966).
 
 
 18
 Ordinarily a passenger, not being in charge of the operation of the [vessel], is not required constantly to keep a lookout. He may rely on the driver to keep watch unless he knows from past experience or from the manner in which the [vessel] is being [operated] on the particular trip, that the driver is likely to be inattentive or careless. (citations omitted)
 
 
 19
 Dudley, 400 S.W.2d at 775. The district court correctly held on the undisputed evidence, however, that Schryver was more than a "mere passenger" aboard the Tempest 38. Schryver and Simon jointly operated the Tempest 38 at the time of the accident; each of them had active responsibility for and control over certain aspects of navigation of the boat.
 
 
 20
 Schryver's conduct and the protocol established between himself and Simon made it clear that decisions regarding the operation of the boat were being made jointly. Schryver directed the pilot of the vessel, while he performed certain tests to help gauge the vessel's speed, maneuverability, loudness, and fuel consumption. Schryver decided where the boat should go, how it would be tested, and at what speeds it should travel. Simon and Erdberg responded to all of Schryver's instructions and deferred to his judgment concerning the operation of the vessel. Schryver was aware of the circumstances. He knew the Tempest 38 was traveling at a high rate of speed; he knew the channel was narrow; he was aware of the second vessel; and he knew that Simon's monitoring of the tachometers might cause him to be less than fully attentive to the waterway in front of the Tempest 38. Schryver also knew that Simon and Erdberg had fully complied with each of his instructions throughout the day. There can be no question if Schryver had directed Simon to stop the vessel, he would indeed have done so.
 
 
 21
 These facts demonstrate sufficient joint operation of the vessel for the district court to conclude, as a matter of law, that Simon and Schryver both owed a duty of care to the Regal 21.
 
 
 22
 Since an indemnitee is not entitled to indemnity for sums paid in settlement of a potential claim for active negligence, it is not necessary on summary judgment to determine if the undisputed facts show that Schryver actually breached this duty. To prevail in their defense, it was only incumbent upon the defendants to show that there was no genuine issue of material fact as to whether the third-party plaintiffs settled a potential liability for breaching that duty. Although there seems to be little evidence that Schryver assisted in the decision to pass the Regal 21, a jury could find that he shared responsibility for the boat's location and speed, and that he failed to tell Simon to stop once he saw the Regal 21. It appears to be undisputed that Schryver saw the Regal 21 in time for the Tempest 38 to be stopped and avoid the collision. The only plausible explanation for Simon's failure to stop the boat was his apparent desire to maintain the speed that Schryver had directed in connection with the test. Schryver never released him from the responsibility to operate the boat according to the test requirements. The defendants properly argue that under these facts Schryver and CBS were potentially subject to liability for active negligence. Whether there is a genuine issue of fact as to whether they were in fact actively negligent is irrelevant. The summary judgment denying indemnity was correct.
 
 
 23
 AFFIRMED.