**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARY HOLZHAUER, Individually and
as the Personal Representative of
Harry Holzhauer, deceased,
        *Plaintiff-Counter-Defendant-*
                    *Appellant*,

v.

GOLDEN GATE BRIDGE HIGHWAY &
TRANSPORTATION DISTRICT, a
governmental entity,
                *Defendant*,

and

DAVID P. RHOADES, an Individual,
        *Defendant-Counter-Claimant-*
                    *Appellee.*

No. 16-15942

D.C. No.
3:13-cv-02862-
JST

MARY HOLZHAUER, Individually and as the Personal Representative of Harry Holzhauer, deceased,
    *Plaintiff-Counter-Defendant*,

v.

GOLDEN GATE BRIDGE HIGHWAY & TRANSPORTATION DISTRICT, a governmental entity,
    *Defendant-Cross-Defendant-Cross-Claimant-Appellant*,

DAVID P. RHOADES, an Individual,
    *Defendant-Cross-Defendant-Cross-Claimant-Appellee.*

No. 16-15974

D.C. No.
3:13-cv-02862-JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted June 14, 2018
San Francisco, California

Filed August 10, 2018

Before: Mary M. Schroeder and Ronald M. Gould, Circuit
Judges, and Miranda M. Du,* District Judge.

Opinion by Judge Gould

---

* The Honorable Miranda M. Du, United States District Judge for the District of Nevada, sitting by designation.

# SUMMARY[**]

## Maritime Law

The panel affirmed the district court's grant of judgment as a matter of law in favor of a boat owner in an action under maritime law arising from a fatal boating accident when a recreational speedboat crashed into a passenger ferry.

Addressing the boat owner's duty of care, and relying on persuasive authority from the Eleventh Circuit, the panel held that a boat owner who is a passenger on his boat has no duty to keep a lookout unless the owner-passenger knows that the person operating his boat is likely to be inattentive or careless or the owner-passenger was jointly operating the boat at the time of the accident. The panel held that joint operation is not viewed over the course of the entire trip, but instead at the time immediately preceding and concurrent with the accident. The panel affirmed the district court's grant of judgment as a matter of law in favor of the owner-passenger.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Edward M. Bull III (argued) and Kurt Micklow, Brodsky Micklow Bull & Weiss LLP, Alameda, California, for Plaintiff-Counter-Defendant-Appellant.

David E. Russo (argued) and Matthew W.J. Johnston, Lewis Brisbois Bisgaard & Smith LLP, San Francisco, California, for Defendant-Appellant.

John D. Giffin (argued) and Francesca M. Lanpher, Keesal Young & Logan, San Francisco, California; Lindsay McKasson (argued) and Philip R. Weltin (argued), Weltin Streb & Weltin LLP, Oakland, California; for Defendant-Counter-Claimant-Appellee.

## OPINION

GOULD, Circuit Judge:

These two related appeals arise from a tragic and fatal boating accident when a recreational speedboat crashed into a passenger ferry. Harry Holzhauer (Mr. Holzhauer) was driving his life-long friend Defendant David Rhoades's speedboat. Mr. Holzhauer was looking in the opposite direction of where the speedboat was traveling when he crashed Rhoades's speedboat into the M/S San Francisco ferry. Mr. Houlzhauer died from his injuries and Rhoades was severely injured. Mary Holzhauer (Mrs. Holzhauer), as representative of her late husband's estate and in her individual capacity, sued Rhoades and the Golden Gate Bridge Highway and Transportation District (GGB), which owns the M/S San Francisco ferry. Rhoades filed a cross-claim against GGB and a counterclaim against the Holzhauer

estate. Likewise, GGB filed a cross-claim against Rhoades and a counterclaim against the Estate.

After trial Rhoades moved for judgment as a matter of law against Mrs. Holzhauer, and for judgment as a matter of law against GGB. The district court granted both motions, and Mrs. Holzhauer and GGB appeal. Because the accident occurred while the colliding boats were in San Francisco Bay on waters of the United States, we apply federal maritime law. We hold that a boat owner who is a passenger on his boat has no duty to keep a lookout unless the owner-passenger knows that the person operating his boat is likely to be inattentive or careless or the owner-passenger was jointly operating the boat at the time of the accident. We also hold that joint operation is not viewed over the course of the entire trip, but instead at the time immediately preceding and concurrent with the accident. We affirm the district court's grant of judgment as a matter of law in favor of Rhoades against Mrs. Holzhauer and against GGB.

# I

On February 16, 2013, Mr. Holzhauer was driving Rhoades's speedboat in the bays in and around San Francisco, California. Rhoades was along for the ride and assisted Mr. Holzhauer in his operation of the boat at some times on the trip. While in Richardson Bay, where Sausalito and Belvedere meet San Francisco Bay, the speedboat collided with the M/V San Francisco, a ferry owned and operated by GGB. A witness testified that at the time of the collision, neither Rhoades nor Mr. Holzhauer was looking in the direction that the boat was headed. Mr. Holzhauer died because of his injuries, and Rhoades was seriously injured.

Mrs. Holzhauer, on behalf of herself and the Holzhauer estate, sued Rhoades and GGB for negligence in the death of

Mr. Holzhauer. Rhoades and GGB filed counterclaims against the estate for negligence and filed cross-claims against each other. The case went to trial.

After Mrs. Holzhauer's case in chief, Rhoades moved for judgment as a matter of law that Mrs. Holzhauer had not presented any evidence that Rhoades was "anything other than a cautious and reasonable recreational boat owner and occupant." The district court heard argument on Rhoades's motion for judgment as a matter of law on Mrs. Holzhauer's negligence claim against him. Mrs. Holzhauer's attorney stated both in his opposition papers and at argument that "I'm going to argue tomorrow that Mr. Rhoades didn't do anything wrong" and that he "no longer intend[ed] to argue that Rhoades was negligent." This created an untenable position for the district court wherein a party did not want to pursue a claim but advocated that a jury nevertheless had sufficient facts to find liability.

Mrs. Holzhauer's attorney also stated that *Weissman v. Boating Magazine*, 946 F.2d 811, 814 (11th Cir. 1991) provided the correct standard for a passenger, but argued that a passenger was not defined to include the registered owner of a boat. Mrs. Holzhauer's attorney added that under either the standard applicable to passengers or the standard applicable to owners, there was sufficient evidence to create liability for Rhoades. Rhoades's attorney argued that even if there were a joint venture, that venture "could kind of come and go with the moment on the boat." The district court gave a tentative ruling granting the motion for judgment as a matter of law on Mrs. Holzhauer's claim against Rhoades for negligence. After the close of all evidence, the motion was renewed, and the district court granted the motion and entered a special instruction

notifying the jury that Rhoades was no longer a defendant and that his conduct should not be considered.

At the end of trial, Rhoades also moved for judgment as a matter of law on GGB's cross-claim for indemnity and contribution. No motion was made on GGB's third affirmative defense of comparative negligence. The district court granted Rhoades's motion on GGB's cross-claim for equitable indemnity and contribution and *sua sponte* granted judgment as a matter of law on GGB's affirmative defense of comparative negligence. Because of the judgments as a matter of law, the jury did not assess any shared responsibility of Rhoades in the boating accident.

The jury found Mr. Holzhauer 70% at fault for the accident and GGB 30% at fault. But because of the special instruction, the jury attributed no fault to Rhoades. The jury awarded Mrs. Holzhauer $546,747 in economic damages and $1,000,000 in non-economic damages. It also awarded Rhoades $2,229,559 in economic damages and $1,500,000 in non-economic damages. The estate and Mrs. Holzhauer appeal the district court's grant of Rhoades's motion. And GGB appeals the district court's ruling on its third affirmative defense and its cross-claim for equitable indemnity and contribution.

## II

We have jurisdiction to review this case pursuant to 28 U.S.C. § 1292(a)(3). In reviewing the district court's grant of judgment as a matter of law under Rule 50, we review its findings of fact for clear error and its conclusions of law *de novo. Torres v. City of L.A.*, 548 F.3d 1197, 1205–06 (9th Cir. 2008). We view all evidence in the light most favorable to the nonmoving party without weighing evidence or making credibility determinations. *Id.* With

those legal standards in mind, we review the district court's grants of judgment as a matter of law in Rhoades's favor.

## III

Both Mrs. Holzhauer and GGB argue that the district court erred by applying the incorrect legal standard when determining Rhoades's duty of care. The duty of care that applies to a boat owner riding as a passenger in his boat is a question of first impression. Relying on the principles set forth in *Weissman v. Boating Magazine*, 946 F.2d 811, 814 (11th Cir. 1991), which we consider to be persuasive, we see no material difference between an ordinary boat passenger and a passenger who owns the boat being used, if the boat owner entrusts the boat to a competent operator. We consider each appeal in turn.

## A

Mrs. Holzhauer contends that the district court erred by treating Rhoades as just a passenger and by resolving questions of fact in favor of the moving party. She argues that maritime law is clear that every vessel owner owes others a duty of reasonable care and that applying the *Weissman* passenger standard was a legal error. She argues that even if Rhoades were merely a passenger, the record shows that he was operating the speedboat jointly, so one of the *Weissman* exceptions would apply, permitting a finding of liability. Rhoades responds that Mrs. Holzhauer made a choice to litigate her case against only GGB and now that Mr. Holzhauer was apportioned 70% liability, she attempts to call Rhoades's liability into question. Rhoades contends that the district court applied the correct legal standard: he urges that there is no distinction between a passenger and an owner-passenger for purposes of liability. Rhoades further argues that Mrs. Holzhauer had not provided any facts to

establish a duty on the part of Rhoades particularly because Mr. Holzhauer was an experienced boat operator and because Rhoades did not jointly operate the boat. We agree with Rhoades.

Every shipowner has a "duty of reasonable care under the circumstances." *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1344 (9th Cir. 1988); *see Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) ("We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case."). But as "a general rule, a passenger has no duty to keep a lookout on behalf of the operator of the vehicle." *Weissman*, 946 F.2d at 814. The passenger need only keep a lookout in two circumstances: when "he knows from past experience or from the manner in which the vessel is being operated on the particular trip, that the driver is likely to be inattentive or careless" and when the passenger "jointly operated" the vessel, meaning he "had active responsibility for and control over certain aspects of navigation of the boat." *Id.*

The novel question for us is what legal standard applies when an owner of a boat is also a passenger on his vessel. In tension are general duties of a ship owner to use reasonable care under the circumstances and a passenger's presumed lack of a duty to keep a lookout. Mrs. Holzhauer cites *Kermarec* for the general duty of a boat owner to act reasonably under the circumstances. 358 U.S. at 632. There the Supreme Court held "that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.*

Doubtless a boat owner owes a general duty of care, but that duty of care depends on the circumstances. Here, the circumstances involved a transfer in operation of the boat from Rhoades to Holzhauer. Rhoades, to be sure, had a duty to act reasonably in entrusting operation of the boat to Holzhauer. And yet there is no record evidence whatsoever that Rhoades was derelict in that duty. To the contrary, the record suggests that Rhoades's decision to entrust operation of the boat to Holzhauer was reasonable because Holzhauer "was a safe, cautious, and experienced boat operator." No party disputes that fact. Further, the Eleventh Circuit is the only circuit to have considered when a passenger has a duty to keep a lookout, and we will not create a circuit split merely because Rhoades was also the boat owner. *See CTIA-The Wireless Ass'n v. City of Berkeley, Cal.*, 873 F.3d 774, 776 (9th Cir. 2017) ("[C]ircuit splits are generally to be avoided.").

Although a boat owner has a general duty of care, when that boat owner is functioning as a passenger it makes the most sense to define the scope of duty to align it, so far as boat operations are concerned, with that of a passenger. We conclude that the *Kermarec* and *Weissman* duties are not in conflict. The general reasonableness standard that applies to a boat owner is designed to accommodate the particular circumstances of the case. *Kermarec*, 358 U.S. at 632. When the circumstances are that the boat owner is a passenger on the boat, we hold that an owner-passenger has no duty to keep a lookout unless, as with an ordinary passenger, the person running the boat is known to the passenger to be inattentive or careless in their operation, or the passenger has been jointly operating the boat. *Weissman*, 946 F.2d at 814. We conclude that the district court did not err by applying this standard.

While sitting as a passenger when the accident occurred, Rhoades does not fit within either of the two exceptions specified by the Eleventh Circuit as to when a passenger would have a duty to act as a lookout. *See Weissman*, 946 F.2d at 814. No party argues that Mr. Holzhauer was inattentive or careless on past boating excursions or while operating the speedboat before the accident, and so that exception to the general rule is not applicable here. We conclude that it would be artificial to suggest that there was joint operation of the boat because Rhoades had operated it earlier in the day. Although Rhoades was running the boat earlier that day, the joint operation inquiry properly asks if the boat was being jointly operated when the accident occurred. *See id.* at 814 (noting that both occupants were jointly operating the boat "at the time of the accident" because each "had active responsibility for and control over certain aspects of navigation"). The testimony at trial bore out that although Rhoades had helped Mr. Holzhauer earlier in their trip by explaining the rules-of-the-road for passing and had told Mr. Holzhauer to take another loop of the Bay, Rhoades was looking off into the distance at the San Francisco skyline when the accident occurred. Rhoades allowed Mr. Holzhauer to take a loop, but Rhoades did not direct the exact path that Mr. Holzhauer would take. We conclude that the district court did not err in concluding that Rhoades was not jointly operating the boat when the accident occurred.

While Rhoades did not give any negligent advice or negligently entrust Mr. Holzhauer with the speedboat, it could be argued that there was testimony that could support the idea that his omission to give advice at a critical time might have contributed to the accident. Rhoades testified that his general practices in boating were to be aware of boats around his vessel, to ensure that those who drove his boat

adhered to his safety standards, to watch over people who drove his boat, and to look out for traffic. But Rhoades failed here to look out for vessel traffic on the side of the speedboat, suggested that Mr. Holzhauer make a loop through the ferry lanes, did not warn Mr. Holzhauer about ferry traffic, did not take extra precautions when entering ferry lanes, and did not supervise Mr. Holzhauer, who was found to be 70% at fault in killing himself and hurting Rhoades. But Mrs. Holzhauer's counsel was asked many times by the district court whether counsel thought Rhoades acted negligently. Counsel more than once told the district court that he did not think Rhoades was responsible. We are not persuaded, just as Mrs. Holzhauer's attorney and the district court were not persuaded, that the facts mentioned show negligence on Rhoades's part in the circumstances once one rejects the idea that he was jointly operating the boat and hence responsible as a lookout. Rhoades was reasonable in his decision to allow Mr. Holzhauer, an experienced boater, to operate the boat. Once Rhoades was not negligent in entrusting boat operation to Mr. Holzhauer, he stood in the position of a passenger on the speedboat. Although tragic, it is obvious that the key factor contributing to the accident was the inattention of the two drivers of the two boats that collided, not Rhoades.

**B**

GGB appeals the same issue with a slight twist. GGB argues that the lack of radar reflectors on Rhoades's speedboat limited the ferry's ability to detect it. The district court concluded that radar reflectors, while a good idea, were not required and did not constitute a basis for finding a breach of duty against Rhoades. GGB's expert at trial said that boat owners should equip their boats with reflectors, but did not state that the reflectors were required or even

common among small boat operators. Another expert had no opinion on whether a small boat should have radar equipment. Even if having radar reflectors is a good practice, good practice does not create liability absent facts to support that the practice is an operational standard in the relevant community of small boat owners.

GGB also argues that Rhoades was "complicit" in the collision because he had been directing Mr. Holzhauer's route throughout the day and chose the route of the loop where the accident occurred. Rhoades argues that the evidence supported the conclusion that he had acted reasonably on the day in question because Mr. Holzhauer was an experienced boater and had not done anything unsafe, and because Rhoades was not jointly operating the boat. As we held above, passengers generally have no duty to keep a lookout. *See Weissman*, 946 F.2d at 814. But, if the passenger has notice that the operator is inattentive or careless or the passenger has been operating the boat jointly, he may have a duty to keep a look out. *Id.*

The district court reasoned that Rhoades was not directing the travel of the vessel and that Mr. Holzhauer was an experienced boater. The district court concluded that even though Mr. Holzhauer did not have experience in the San Francisco Bay, there was no law giving rise to a special duty from that type of lack of experience. We reject the contention that Rhoades is a joint operator of the boat because he had assisted Mr. Holzhauer previously that day. There is no evidence in the record to support the conclusion that Rhoades was jointly operating the speedboat when the accident occurred. Therefore, none of the *Weissman* exceptions to the general rule for a passenger—that he has no duty to keep a lookout—apply.

Golden Gate finally argues that comparative negligence is ordinarily a jury question, and that there were facts sufficient for a reasonable jury to conclude that Rhoades's conduct was not that of a reasonably prudent person. After hearing argument on Rhoades's motion, the district court dismissed GGB's affirmative defense for comparative negligence against Rhoades and its cross-claim for equitable contribution and indemnity, although Rhoades had only moved for judgment as a matter of law on GGB's cross-claim for equitable contribution and indemnity. Rhoades's attorney had also said that "the comparative-negligence issue [was] not at issue in th[e] motion."

A claim for indemnity is not the same as an affirmative defense for comparative negligence. In this case, GGB sought indemnification from Rhoades for any liability GGB was ultimately apportioned for causing Mr. Holzhauer's death. Courts have recognized that under tort principles, "a passively negligent party in admiralty can recover indemnity damages from a primary negligent party." *SPM Corp. v. M/V MING MOON*, 22 F.3d 523, 526 (3d Cir. 1994). The affirmative defense of comparative negligence, however, would reduce any liability GGB may have had in the collision by the proportion of Rhoades's own negligence in the accident. *See United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411 (1975). The former causes Rhoades to share in the cost GGB pays for liability to Mr. Holzhauer, and the latter reduces any award GGB would pay in Mr. Rhoades's favor.

While these claims are separate and distinct, the distinction does not lead to different results here because comparative negligence requires some negligence on Rhoades's part. GGB points to the fact that "Rhoades admitted that his normal practice when someone else is

driving is that '[he] kind of check[s] to see how they're doing; how they're driving; if they seem to be capable of just looking out for other traffic. Are they exceeding any kind of speed that I wouldn't do.'" "He admitted that had he noticed that Mr. Holzhauer was not looking in the direction that he was steering, he would have corrected him." GGB points to the fact that there was evidence that Rhoades had a lot of experience operating his boat in San Francisco Bay, compared to Mr. Holzhauer who, while experienced at boating, had hardly any experience operating speedboats in the San Francisco Bay. This, GGB claims, supports the view that Rhoades breached a duty of care in the circumstances. GGB's argument is that even if Rhoades did not have a duty to operate as a lookout for other boats, he had some duty to watch Mr. Holzhauer to make sure he was driving safely. But there is no evidence that Rhoades behaved negligently at all in his duty under the circumstances. Rhoades's duty was to ensure that he entrusted the operation of his boat to a competent boater, and everyone agrees that Mr. Holzhauer met this criterion. Rhoades was available for Mr. Holzhauer when he needed assistance navigating, but Rhoades otherwise enjoyed the day of boating with his skilled friend at the helm. Rhoades watched for the aberrant behaviors noted above, but when Mr. Holzhauer did not exhibit them, Rhoades enjoyed the leisure cruise. It is not surprising that a small boat owner would do that after entrusting operations to an experienced boater. Rhoades did not act negligently in regards to himself or Mr. Holzhauer, so there is no basis to reduce Rhodes's recovery. We affirm the district court.

## IV

We hold that a boat owner who is a passenger on his boat has no duty to keep a lookout unless the owner-passenger was jointly operating the boat or the owner-passenger knows

from past experience or from conduct that day that the person operating the boat is likely to be inattentive or careless. We hold that joint operation is not viewed over the course of the entire trip, but that we instead look at the time immediately preceding the accident. The district court applied the correct legal standard by adopting the reasoning in *Weissman*, and we affirm.

**AFFIRMED.**