ELLARD FUGATE, Plaintiff-Appellant, *v.* BRIAN T. GALVIN *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 78-1607

Opinion filed May 7, 1980.

James G. Andros, of Chicago, for appellant.

Tim J. Harrington, of Chicago (Robert Guilfoyle, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

The passenger in another's car cannot be liable when, knowing that the owner-driver is intoxicated, he nevertheless asks the owner-driver to take him home from a friend's house they are visiting, only to have the owner-driver run down a pedestrian.

Harry S. Nosal, now deceased, asked defendant Brian T. Galvin to drive him to and from the house of a mutual friend in Galvin's automobile. Galvin took Nosal to the friend's house without incident, but on the way back struck the plaintiff, who was walking on the shoulder of a road. Fugate sued Galvin, then amended his complaint to name Nosal's

administrator as an additional defendant. Holding that the count against the administrator failed to state a cause of action, the circuit court dismissed it.

The amended complaint, the allegations of which are accepted as true for purposes of review (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538, 539), stated that Galvin was intoxicated and that Nosal knew or should have known of his companion's propensities to drink excessively, use drugs and be inattentive and ill when driving. It alleged that Nosal knew or should have known that Galvin was incapable of chauffeuring him, but nevertheless "put [Galvin] in motion" while he (Nosal) fell asleep. The complaint charged Nosal with negligence in entrusting driving duties, selecting a chauffeur, falling asleep and managing, maintaining, operating and controlling Galvin's vehicle. It concluded that as a proximate cause of Nosal's negligence, Fugate was struck by the car.

Plaintiff argues that Nosal owed him a duty to see that his dangerous instrumentality (Galvin) did not injure the plaintiff. In negligence actions, a duty to the plaintiff is a requisite for recovery, and it is up to the court to rule, as a matter of law, whether there was a duty owed by the defendant to the plaintiff. (*Fancil*, 60 Ill. 2d 552, 555.) The task of determining whether there is a duty is assigned to the court rather than the jury because the very concept is meant to be a limitation on liability. Prosser teaches that in the early days of the common law there was never much concern with duties. "The defendant's obligation to behave properly apparently was owed to all the world, and he was liable to any person whom he might injure by his misconduct." (Prosser, Torts §53, at 324 (4th ed. 1971).) The concept of "duties" was developed by courts during the industrial revolution as a means by which the responsibilities of industry could be limited: no action could be founded upon the breach of a duty owed to someone other than the plaintiff. Prosser, at 325.

Although the essential question is whether the plaintiff's interests should be entitled to legal protection against the defendant's conduct (Prosser, at 325), the law has found duties to exist only where the parties are in the proper legal relationship. Nosal and Galvin did not stand in a relationship which gives rise to a recognized duty.

The general rule is set out in the Restatement (Second) of Torts §315 (1965):

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) A special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) A special relation exists between the actor and the other

which gives to the other a right to protection." (Restatement (Second) of Torts §315 (1965).)

The special relations referred to in (a) are parent-child (§316), master-servant (§317), land possessor (§318) and custodian of a person with dangerous propensities (§319) (examples of custodians include administrators of hospitals or sanataria and members of parole boards) (see also *Semler v. Psychiatric Institute* (4th Cir. 1976), 538 F.2d 121; *Grimm v. Arizona Board of Pardons & Paroles* (1977), 115 Ariz. 260, 564 P.2d 1227). The special relations referred to in (b) are common carrier-passenger, innkeeper-guest, landowner-invitee and the custodianship of another in circumstances depriving the other of the normal opportunities for protection (examples include warden-jail inmate) (see *Shea v. City of Spokane* (1977), 17 Wash. App. 236, 562 P.2d 264, *aff'd adopting lower court opinion* (1978), 90 Wash. 2d 43, 578 P.2d 42) (§314A). Where none of these relations exist there is no duty on the defendant to act to prevent an accident even if he could do so "with only the most trivial of efforts and without any inconvenience to himself." (Restatement (Second) of Torts, Explanatory Notes §315, comment b, at 122 (1965).) The relationship between Nosal and Galvin did not fall into any of these categories.

The restatement explicitly notes that where the passenger in a third person's car is *merely a guest*, he is not liable to another run over by the car even if he knew of the other's danger and knew that, by a mere word, he could give the driver the opportunity to avoid the danger. (Restatement (Second) of Torts, Explanatory Notes §315, comment b, at 122 (1965).) The plaintiff argues, however, that because Nosal took the affirmative step of asking Galvin to drive him to and from the friend's house, Nosal was more than merely a guest in Galvin's car. The plaintiff characterizes Galvin as an independent contractor who is not being paid. He refers us to section 308, which places a duty on the defendant where the third party uses a thing or engages in an activity under the defendant's control, and section 307, which places a duty on the defendant where he uses an incompetent—the third party—as his instrumentality. Neither of these sections encompasses what Nosal did. Galvin's car and Galvin himself were both beyond Nosal's control. Nosal could not force Galvin to drive, only encourage him. And, the "use" to which section 307 refers is use in an employment or business context, not the use which occurs when a driver accedes to a friendly request for transportation. Restatement (Second) of Torts, Explanatory Notes §307, comment a, at 99 (1965).

The Illinois rule is well settled, and is in accord with that of other jurisdictions. The liability for the damage caused by the negligent act of a driver does not attach against a person other than the driver, unless that person is the owner or has the right to control the vehicle. (*Palmer v. Miller* (1942), 380 Ill. 256, 260, 43 N.E.2d 973, 975; *Ritter v. Taucher*

(1978), 65 Ill. App. 3d 464, 467, 382 N.E.2d 343, 345; *Kitch v. Adkins* (1952), 346 Ill. App. 342, 344-45, 105 N.E.2d 527, 528.) If the passenger is the owner or controller of the car, his negligence lies in the entrustment of driving duties to an incompetent (*Scott v. Valentine* (1971), 132 Ill. App. 2d 101, 104, 268 N.E.2d 485, 487; *Staken v. Shanle* (1959), 23 Ill. App. 2d 269, 278, 162 N.E.2d 604, 608-09; *see Bohnen v. Wingereid* (1979), 80 Ill. App. 3d 232, 239, 398 N.E.2d 1204, 1209), for the owner may at any time force the driver to surrender the wheel and thus avoid the accident. Where the passenger does not own the car, however, the final decision to permit an intoxicated driver to take the car upon the road is never the passenger's, and so there can be no duty on him. *Sloan v. Flack* (La. App. 1963), 150 So.2d 646, 648.

The passenger's mere request to the driver to take him to a destination cannot create a duty. In *Hulse v. Driver* (1974), 11 Wash. App. 509, 524 P.2d 255, a passenger in the driver's car suggested a destination, drank wine with the driver on the way and fell asleep on the way back but was not held liable on the plaintiff's theory of negligent entrustment. The court noted that the passenger could not exert control over the driver's vehicle, and that had he taken away the driving duties of the owner's car the action would have constituted conversion. (11 Wash. App. 509, 515, 524 P.2d 255, 259.) *Hulse* demonstrates that the plaintiff's analogy here to an independent contractor is inappropriate. Unlike an independent contractor, who is asked to deliver a specific result in return for payment, Nosal's request to Galvin was gratuitous. Because he received nothing in return, Galvin's acquiesence in the request did not oblige him to do anything. The decision to take to the road in an intoxicated condition remained the driver's alone. Because Galvin alone could make the decision, Galvin alone had to bear the consequences of a bad decision. No duty should be placed on the passenger who has neither the legal right to require a person to drive nor to prevent him from driving. (See *Bahm v. Dormanen* (1975), 168 Mont. 408, 543 P.2d 379; *Cuppy v. Bunch* (So. Dak. 1974), 214 N.W.2d 786; *Russo v. Aucoin* (La. App. 1942), 7 So.2d 744.) The relationship of friends riding together in an automobile does not place upon the passenger the duty to install a capable driver in the seat of his friend's car.

In oral argument counsel for the plaintiff conceded that the complaint was not based upon a claim that Galvin was Nosal's agent or that the driver and passenger were engaged in a joint venture. In any event, the plaintiff could not have prevailed on a joint venture theory; to establish a joint venture sufficient to create a duty of the type desired, a business purpose in which the parties are mutually interested must be established. (*Grubb v. Illinois Terminal Co.* (1937), 366 Ill. 330, 339, 8 N.E.2d 934, 938.) Neither joint vacation trips (*Babington v. Bogdanovic*

(1972), 7 Ill. App. 3d 593, 288 N.E.2d 40), nor car pools which do not share expenses (*Bridgewater v. Wagoner* (1960), 28 Ill. App. 2d 201, 170 N.E.2d 785), nor trips to a doctor to treat the parties' son (*Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461) are joint ventures. "Something more is required for a joint enterprise than merely traveling together to a destination for a common purpose." (*Coffman v. Kennedy* (1977), 74 Cal. App. 3d 28, 32, 141 Cal. Rptr. 267, 269.) There was no joint venture where Nosal and Galvin arranged to travel together to visit a mutual friend.

With no authority under the Restatement or the law of Illinois or other States, should this court for the first time create the duty for which the plaintiff argues? As our ideas of personal relationships change, our notions of legal duties may change as well. (Prosser, at 326.) Courts which recognize new duties do so after considering factors such as the relative ease in preventing the injury, the convenience of administration, the capacities to bear loss and the moral blame attached to the misconduct. (Prosser, at 327.) As noted above, where the passenger neither owns the car nor hires the driver, the driver has the last word and is the only one who could prevent the injury by his decision whether to drive. There would be no administrative advantage in extending liability to a passenger for an injury suffered under these circumstances. The action would involve proving the same elements as a suit against the driver for negligence because of intoxication, plus the additional elements of the passenger's relationship to the driver and his knowledge of the driver's propensity to intoxication. While creating a new duty would assist injured plaintiffs by spreading the loss among a new class of defendants, up to now society has been satisfied to rely upon the liability of the driver alone to adequately compensate injured plaintiffs. The fortuitous circumstance of one driver's inability to pay for damages he has caused should not be a reason to open new arenas of liability in search of perfect compensation schemes. Finally, as discussed above, the driver in this case bore final responsibility for the consequences of his decision. The policy of requiring individuals to take responsibility for their own acts militates against the creation of a new duty.

There is no reason to extend the law by finding a duty in the passenger here. The circuit court correctly dismissed the count of the complaint for failing to state a cause of action.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.