Melanie OLSON and Dennis J. Olson, Appellants,

v.

Ivan Marvin ISCHE, Defendant,

Randy Lee Fritz, Respondent,

Darrell St. John, Respondent,

Knight Klub, Inc., and Dana J. Nelson, Respondents,

United Fire and Casualty Company, Respondent,

and

ALL NATION INSURANCE COMPANY, Respondent,

v.

HOME MUTUAL INSURANCE COMPANY, plaintiff in intervention, Respondent.

Melanie OLSON and Dennis J. Olson, Appellants,

v.

Randy Lee FRITZ, Respondent.

Nos. C3-83-55, C5-82-1651.

Supreme Court of Minnesota.

Jan. 20, 1984.

O'Neill, Burke & O'Neill, Patrick H. O'Neill, Peter H. Grills and Michael B. Braman, St. Paul, for appellants.

Cousineau, McGuire, Shaughnessy & Anderson by Kathleen Drake, Minneapolis, for Home Mut. Ins. Co., respondent.

Peterson, Bell & Converse, Willard L. Converse, St. Paul, for Randy Lee Fritz, respondent.

Rothstein, Wolf, Kaplan & Goff, Howard L. Kaplan, St. Paul, for All Nation Ins. Co., respondent.

Kronick, Moskovitz, Tiedemann & Girard, Beth Ann Lane, Sacramento, Cal., for amicus curiae Mothers Against Drunk Drivers (in support of plaintiff-appellants).

SIMONETT, Justice.

Plaintiff, injured in an auto accident, sues the *passenger* in the other car. The companies insuring the passenger counter with a declaratory judgment action that their policies afford no coverage for the claims of plaintiff and her husband. On motions for summary judgment, the trial court held that plaintiffs have no cause of action against the passenger and that there is no insurance coverage for the claims. We affirm the judgment of no cause of action; the companion appeal on insurance coverage we dismiss as moot.

Although the trial court ruled on the insurance coverage question first, we will discuss first what is really the decisive issue, namely, whether plaintiffs have stated a tort cause of action against the passenger.

In the early evening of January 30, 1982, plaintiff-appellant Melanie Olson was driving her automobile on a highway near Norwood, Minnesota, when an oncoming car swerved into her lane causing a head-on collision. Melanie Olson sustained extremely serious injuries. She lost her unborn child, and Melanie, herself, is permanently comatose.

Traveling in the other car were driver-owner Ivan Ische and his passenger, defendant-respondent Randy Lee Fritz. Ische and Fritz were apparently returning to their homes in Norwood after having spent the afternoon in Waconia drinking and playing cards with Ische's brother and some friends. Ische and Fritz had decided, at about 7:15 p.m., to return to Norwood. Ische was noticeably intoxicated by this time; his brother told him not to drive and attempted, unsuccessfully, to take the car keys from him. A witness testified that Ische and Fritz each took a plastic cup of beer with them as they left. Fritz testified that Ische drove his own car and that he, Fritz, sat in the right front seat and made no attempt to operate or steer the car. Fritz does not remember anyone telling Ische not to drive. Ische remembers being at his brother's apartment, but he does not remember leaving it, nor does he remember anything else until some 4 or 5 days after the accident. Ische's blood sample, taken after the accident, had a blood-alcohol content of .17%.

A car was following Ische's car prior to the accident. The driver, by affidavit, described the Ische car as speeding, weaving on the road, and then colliding with the Olson car in Olson's lane. This witness stated that after the accident there was a strong smell of alcohol in the Ische vehicle. Affidavits of a highway patrolman and a deputy sheriff, who investigated the accident, were also submitted. An investigator hired by plaintiffs' attorney stated by affidavit that Ische had told him that he was surprised he was headed away from Waconia at the time of the accident because his girlfriend was working the night shift in Waconia. The car was headed toward Norwood where both Ische and Fritz lived.[1]

Plaintiff Melanie Olson and her husband Dennis commenced their personal injury action against defendant-passenger Fritz and others. Viewing the evidence most favorably to the Olsons, a trier of fact could find that Ische, the owner-driver, was intoxicated and driving while under the influence; that his passenger Fritz was also under the influence of intoxicants; and that the passenger knew or should have known the driver was drunk, disobeying the law by driving, and likely to cause harm to others on the highway. Assuming this to be so, the trial court ruled there was no causal legal relationship between defendant Fritz' occupancy of the Ische car as a passenger and Melanie Olson's injuries and, accordingly, held that there was no legal basis on which passenger Fritz could be responsible for Melanie Olson's injuries.[2]

It is undisputed that Ivan Ische, not Randy Fritz, was the owner of the car; therefore, Fritz lacked the legal rights of an

1. Appellants Olson argue that summary judgment on the tort liability issues in their personal injury action is, in any event, premature because they did not have an opportunity to complete their discovery. They point out that they have not had an opportunity to depose the people who were partying with Fritz and Ische before the accident. Affidavits of these persons were, however, submitted, and the depositions of both Fritz and Ische were taken. Plaintiffs have suggested no other pertinent facts which might be developed, nor did they move for a continuance in the trial court. We find no

reason not to dispose of these appeals on the record made below. Cf. Dalco Corp. v. Dixon, 338 N.W.2d 437 (Minn.1983).

2. The summary judgment in the Olson personal injury suit is a partial summary judgment because the Olsons also sued other defendants (including Ische, who apparently is uninsured), and these claims are still pending. We granted, however, discretionary review. We also granted leave to Mothers Against Drunk Drivers (MADD) to brief the tort liability issues.

owner to exercise control over the car in which he was riding. Further, as a matter of law, there was no showing that defendant Fritz in any way interfered with the owner-driver's operation of the motor vehicle. Defendant Fritz simply sat in the righthand front seat as a passenger.

The trial court's ruling of no causation would appear to be correct unless plaintiffs are able to establish some new legal theory that would, on the given set of facts, impose a duty of care on passenger Fritz. Plaintiffs propose such a new legal duty. They also, together with amicus, propose theories of vicarious and joint tort liability.

### Passenger's Duty of Care

Plaintiff-appellant Olsons first argue that a passenger in a car owes a duty of reasonable care to others on the highway to act so as not to subject those other persons to unreasonable risks of harm. Restatement (Second) of Torts § 298 (1965). The manner in which plaintiffs claim this duty is to be discharged is less clear. Plaintiffs state they do not contend that the passenger has a legal duty to physically restrain an intoxicated driver; instead, they argue that the passenger has a duty "to take precautions not to in any way assist, aid or encourage an intoxicated person to operate a motor vehicle." In view of plaintiffs' concession that there is no duty to physically restrain the driver, it is unclear just how and to what extent this duty not to assist is to be exercised and what would constitute a breach thereof.

The case law is contrary to appellants' position. Other courts have refused to impose a duty on a passenger to control or influence the driver, at least where the passenger is not the owner of the car or has not interfered with the operation of the motor vehicle by the driver. *See Fugate v. Galvin*, 84 Ill.App.3d 573, 573, 40 Ill.Dec. 318, 319, 406 N.E.2d 19, 20 (1980) ("The passenger in another's car cannot be liable when, knowing that the owner-driver is intoxicated, he nevertheless asks the owner-driver to take him home from a friend's house they are visiting, only to have the owner-driver run down a pedestrian."); *Danos v. St. Pierre*, 383 So.2d 1019, 1022 (La.App.1980) ("Mere knowledge or awareness of the intoxicated condition of the driver, alone, does not create a relationship which imposes a duty upon a guest passenger to protect against the particular risk involved in the instant case."); *Sloan v. Flack*, 150 So.2d 646 (La.App.1963); *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn.1978) ("A passenger has no duty to the public to control or to attempt to control the operation of a vehicle where he has no right to do so, either as a result of his relationship to it or to the driver."); *Hulse v. Driver*, 11 Wash.App. 509, 524 P.2d 255 (1974). *See also Sports, Inc. v. Gilbert*, Ind.App., 431 N.E.2d 534, 538 (1982) ("At least four courts have not imposed any duty on the passenger of a drunk driver to exercise any control over the other's driving where the driver owned the car.").

A passenger has, of course, a legal duty to use care for his own safety, and his contributory negligence will bar or diminish his own claim. He may also have a moral duty owed to others not to encourage the driver to drive when he should not be driving. But to impose a legal duty on the passenger, which makes him liable to others on the highway for what the driver himself chooses to do, seems to us, as a general proposition, inappropriate. Such a rule assumes, incorrectly, that a passenger somehow shares in the management of the motor vehicle, and it further assumes the driver is amenable to the passenger's influence. For Fritz to join Ische in the car ride as he did here may be encouragement of a sort, but not the kind that creates legal liability. Significantly, plaintiffs do not claim Fritz had an affirmative duty to dissuade Ische from driving; the efforts of Ische's brother in this regard were to no avail. Nor do plaintiffs claim Fritz had a duty to physically restrain Ische, a duty that could make a bad situation worse. And although plaintiffs prefer to limit their proposed duty to intoxicated drivers, the problem nevertheless arises regarding what should be the passenger's duty to control a driver who is only inattentive or

otherwise driving negligently. *See* Restatement (Second) of Torts, § 315, comment (b) (1965) (suggests no duty on the passenger to prevent an accident in such a situation).

Section 315 of the Restatement (Second) of Torts (1965), cited by plaintiff-appellants, provides that there is no duty to control the conduct of a third person to prevent him from causing harm to another unless a "special relation" exists between the actor and the third person. Examples of this "special relation" as given in the Restatement are parent-child, master-servant, land possessor, and custodian of a person with dangerous propensities. Other examples given are carrier-passenger, innkeeper-guest, landowner-invitee, and certain custodianships. As respondent Fritz points out, the relationship of driver-owner and passenger is not listed, nor do we believe it should be included under the facts here.

Recently, in *Cole v. City of Spring Lake Park*, 314 N.W.2d 836 (Minn.1982), we refused to impose liability in an analogous situation. There the drunk driver, Bookey, stopped at the home of his sister and brother-in-law. Notwithstanding his history of heavy alcohol consumption, Bookey was served liquor; when he became obnoxiously intoxicated, he was told to leave, even though he asked to remain. Bookey left and had an auto accident injuring plaintiffs, who sued the sister and brother-in-law. We held plaintiffs had no dramshop cause of action. But in addition, plaintiffs alleged the sister and brother-in-law knowingly and recklessly created an unreasonable risk of physical harm to others, including plaintiffs, by refusing to let the drunk driver stay in their home. This court held that these allegations did not establish any common-law negligence action independent of dramshop liability.

■ A passenger who interferes with his driver's operation of the motor vehicle, for instance by grabbing the steering wheel, may be liable to others, and a passenger who is the owner of the car may be liable, at common law, for negligent entrustment to an incompetent driver. This case, however, is different. We hold that a passenger has no duty to members of the public to control the operation of a motor vehicle by its intoxicated owner, where, as under the circumstances here, there is no special relationship between the driver-owner and the passenger. Perhaps there may be instances where such a duty would arise, but this case is not one of them.

### *Vicarious or Joint Tort Liability*

A. Plaintiff-appellants also argue that defendant passenger Fritz is liable to them because Fritz, the passenger, and Ische, the driver, were engaged in a joint enterprise, so that the driver's admitted negligence is imputed to his passenger. We disagree.

■ As appellants correctly point out, the trial court erred in denying their joint enterprise theory on the ground that no business relationship existed between Fritz and Ische. A business relationship is needed for a joint venture but not for a joint enterprise. *Delgado v. Lohmar*, 289 N.W.2d 479, 482 n. 2 (Minn.1979). Nevertheless, the trial court reached the right result, if for the incorrect reason. What is required for a joint enterprise is: "(1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose." *Id.* at 482. The second requisite, a right to a voice in the direction and control, has been held to require the *legal right* to control the means used to carry out the common purpose. *Id., citing Murphy v. Keating*, 204 Minn. 269, 283 N.W. 389 (1939).

■ Here the passenger Fritz had no legal right to exercise control over the operation of Ische's car. "Realistically speaking, the joint enterprise concept is seldom applicable to the passenger and driver relationship." *Burdick v. Bongard*, 256 Minn. 24, 32, 96 N.W.2d 868, 874 (1959). *See Wettschreck v. Kozlowski*, 314 N.W.2d 836, 838 (Minn.1982) (trial court dismissed on both the social host theory and the joint

enterprise theory, and this court affirmed but without discussing joint enterprise). *But cf. Feeser v. Emery,* 270 Minn. 435, 134 N.W.2d 23 (1965); *Murphy v. Keating,* 204 Minn. 269, 283 N.W. 389 (1939) (joint enterprises recognized in group trips where all occupants of the car shared costs and responsibilities on the trips).

We hold, therefore, that as a matter of law defendant Fritz and the driver-owner Ische were not engaged in a joint enterprise and that plaintiff-appellants cannot recover under this theory.

■ **B.** Amicus Mothers Against Drunk Drivers (MADD) submit that plaintiffs should recover under a theory of "joint concerted tortious conduct," citing Restatement (Second) of Torts § 876 (1977), which reads in part:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act *in concert* with the other or pursuant to *a common design* with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives *substantial assistance or encouragement* to the other so to conduct himself,
>
> * * *. [Emphasis added.]

Amicus maintains that both subdivisions (a) and (b) apply to the facts of this case, because defendant Fritz' willingness to drink and ride with Ische substantially encouraged Ische's conduct. Further, they assert that venturing out on the highway in a drunken state constituted a tortious act committed in concert by the two men.

In support of this theory, amicus argues by analogy to a Tennessee criminal case, *Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815 (1959). There a passenger was held jointly guilty with the intoxicated driver of involuntary manslaughter. The Tennessee Supreme Court stated:

> [W]hen one sits by the side of another and permits him without protest to operate the vehicle on a highway in a state of intoxication as the jury was clearly warranted that these people were doing here-

in, the one sitting by is as guilty as the man at the wheel.

*Id.* at 169, 325 S.W.2d at 821. Amicus fail to point out, however, that the same Tennessee Supreme Court subsequently refused to apply its *Eager* holding to create civil liability on a nonowner passenger who permits a drunk driver to drive. *Cecil v. Hardin,* 575 S.W.2d 268 (Tenn.1978). We prefer the reasoning of the *Cecil* decision and of the Massachusetts court in *Stock v. Fife,* 13 Mass.App. 75, 430 N.E.2d 845, 849 n. 10 (1982), where, in rejecting a section 876 claim under the Restatement, the Massachusetts court said:

> In the tort field, the doctrine [of section 876] appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result. . . . "[T]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." [Citing Prosser.]

Here there is not the kind of situation where it can be said the driver and passenger were acting "in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." Restatement (Second) of Torts § 876, comment (a) (1977). Nor is there the kind of "substantial encouragement" by the passenger of the driver's conduct needed to impose joint tort liability. Fritz was with Ische, partying with others, each doing his own drinking voluntarily, and Fritz voluntarily accompanied Ische on his return trip to Norwood in a guest-host driving situation. We hold that, as a matter of law, plaintiff-appellants do not have a cause of action against defendant Fritz under section 876 of the Restatement (Second) of Torts.

■ **C.** Finally, plaintiff-appellant Olsons raise on appeal, though they failed to do so below, the claim that the facts permit an inference of violation by defendant Fritz of the "open bottle" law, Minn.Stat. § 169.-

122 (1982), which would be prima facie evidence of negligence, and thus summary judgment for Fritz is precluded. Considering the evidence in the light most favorable to plaintiffs, it might be inferred that Fritz had a plastic cup of beer with him in the car. Although this issue is not properly before us, we will consider it.

Assuming *arguendo* that defendant Fritz was negligent in having an open container of beer in the car, there is no showing how Fritz' possession or consumption of beer was a cause of Ische's negligent driving. If the claim is that Fritz furnished the beer to Ische either before they got in the car or while in the car, an entirely different theory of liability would be presented, one not even raised here by appellants probably because the legislature, by the Civil Damages Act, has preempted any dramshop or common-law action for liquor liability against a social host. *Cole v. City of Spring Lake Park*, 314 N.W.2d 836 (Minn.1982). We hold as a matter of law that there is no direct cause between any "open bottle" violation and plaintiffs' injuries.

## Insurance Coverage

Passenger Randy Fritz owned a car of his own, insured with All Nation Insurance Company. He lived at home with his parents and was also, therefore, as a member of the household, an insured under his father's auto liability policy with Home Mutual Insurance Company. All Nation commenced a declaratory judgment action against Melanie and Dennis Olson and Randy Fritz to determine if its policy afforded coverage for the claims alleged in the Olsons' personal injury lawsuit. Home Mutual intervened in this action to determine its coverage status as well.

The trial court granted the summary judgment motions of both insurers, declaring neither insurance policy furnished coverage for the Olson claims. Defendant-appellant Olsons appeal.

We believe this appeal should be dismissed as moot. As previously mentioned, the trial court decided the declaratory judgment coverage issues first, some three weeks before it granted summary judgment for defendant Fritz in the Olson personal injury suit. In other words, at the time the trial court decided the coverage questions the tort claims were still pending. In this posture, the trial court ruled that there was no causal relationship between Randy Fritz' occupancy of the Ische car as a passenger and the Olson injuries.

We have now affirmed the trial court's decision in the Olson personal injury action, holding as a matter of law there was no direct or proximate cause between Randy Fritz' conduct as a passenger and the Olson injuries. The causal relationship needed to establish insurance coverage, however, is something less than the proximate cause needed for tort liability. *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). Presumably, then, we still have before us the questions of whether Randy Fritz as a passenger was "using" the Ische car and whether the Olson third-party tort claims "arose out of" such use. *See National Family Insurance Co. v. Boyer*, 269 N.W.2d 10 (Minn. 1978). We see no need, however, to discuss these questions. It would be an idle exercise to decide if there is claims coverage for claims we have held do not exist.

Judgment for defendant Fritz in the Olson personal injury suit is affirmed; the Olsons' appeal in the All Nation declaratory judgment action is dismissed as moot.

YETKA, Justice (dissenting).

I would reverse and remand for trial on the ground that summary judgment was premature. I find logic in the language of the Tennessee court in *Eager v. State*, 205 Tenn. 156, 169, 325 S.W.2d 815, 821 (1959):

[W]hen one sits by the side of another and permits him without protest to operate the vehicle on a highway in a state of intoxication as the jury was clearly warranted that these people were doing herein, the one sitting by is as guilty as the man at the wheel.

If criminal liability is thus imposed, it makes no sense to me that civil liability should not follow. I believe plaintiffs should have been permitted to develop the fact situation at trial in an effort to establish liability under section 876 of the Restatement (Second) of Torts (1977).