**Marjorie Gail SHINN, Individually and as Representative/Sole Heir of the Estate of Robert Wayne Shinn, Appellant,**

**v.**

**Russell Martin ALLEN, Appellee.**

**No. 01–97–01068–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 10, 1998.

Paul R. Tinsley, Lawrence P. Wilson, Gavin H. McInnis, Houston, for Appellants.

Teresa A. Carver, Houston, for Appellees.

Before Justices COHEN, WILSON, and NUCHIA.

## OPINION

## ON MOTION FOR REHEARING

DAVIE L. WILSON, Justice.

Appellant, Marjorie Gail Shinn, individually and as representative/sole heir of the estate of Robert Wayne Shinn, appeals the rendition of summary judgment in favor of appellee, Russell Martin Allen. We deny appellant's motion for rehearing, but we withdraw our previous opinion dated October 22, 1998 and substitute this opinion in its stead. Our opinion of October 22, 1998, which affirmed the trial court's judgment, remains unchanged.

### Factual and Procedural Background

In December 1994, a vehicle driven by Jeremy Michael Faggard, in which Allen was a passenger, collided with a vehicle driven by Robert Wayne Shinn, Gail Shinn's husband. Robert Shinn was killed in the accident, and Gail Shinn was seriously injured.

Gail Shinn sued Allen for negligence, alleging Allen substantially assisted or encouraged an intoxicated person to drive an automobile on public roads that resulted in the collision which killed Robert Shinn and injured her. Allen countersued, alleging negligence against Robert Shinn and a statutory violation of the Transportation Code. This counterclaim was eventually settled. Allen also moved for summary judgment contending he owed no duty to Gail Shinn. The summary judgment was granted.

### Point of Error

In her sole point of error, Gail Shinn alleges the trial court erred in granting Allen's

motion for summary judgment because the evidence established the existence of both a duty and a question of material fact under the concert-of-action theory of liability.[1]

### Standard of Review

A party moving for summary judgment has the burden of proving there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we accept the evidence that favors the nonmovant as true and indulge all reasonable inferences and resolve all doubts in favor of the nonmovant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). When the defendant produces competent evidence to negate a necessary element of the plaintiff's cause of action, to preclude summary judgment, the plaintiff must introduce evidence sufficient to raise a fact issue with respect to the element the defendant seeks to negate. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). We must affirm the judgment if any theory advanced by a defendant in his motion is meritorious. *Cincinnati Life Ins., Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996).

### The Summary Judgment Evidence

The summary judgment evidence consists of Allen's affidavit, his deposition, his answers to interrogatories, and a copy of the judgment in Faggard's driving-while-intoxicated case.

On the day of the accident, Faggard picked Allen up from his parents' home at approximately 3:00 p.m. to go and "hang out." Allen and Faggard were acquaintances who had met playing volleyball. Allen stated that Faggard was not a "close buddy of mine." Both Allen and Faggard were under 21 years of age; however, about an hour before the accident Faggard decided to buy some beer. Faggard and Allen went to the convenience store where Faggard bought a twelve-pack of

1. Duty and whether or not a question of material fact exists under the concert-of-action theory are the only issues raised by appellant. Proximate cause was not raised and, therefore, will not be addressed in this opinion.

beer. Allen did not pay for the beer or arrange for the purchase of the beer. Allen stated he did not plan on drinking that day and did not know that Faggard drank. After buying the beer, Faggard and Allen went to Faggard's house and talked and drank the beer. Allen consumed four or five beers, and Faggard consumed six or seven. Allen and Faggard did not eat anything while drinking the beer, and the last time Allen ate was at "lunchtime."

Sometime before 7:00 p.m., Allen asked Faggard to take him home because his parents wanted him home by 7:00 p.m. to eat dinner.[2] During the ride home, Allen did not think Faggard was speeding.

The summary judgment evidence indicates Allen did not exercise any control over the operation of Faggard's vehicle. Allen affirmatively stated that he did not know what Faggard's tolerance level to alcohol was. Allen did not observe anything indicating Faggard was intoxicated before the accident. Faggard did not slur his words and was not stumbling or walking in a way that would indicate he was intoxicated. Allen, however, did state that he (Allen) was drunk.[3] Faggard was later convicted of driving while intoxicated.

### Concert–of–Action Theory

■ Gail Shinn asserts that the summary judgment should be reversed because there is a fact issue regarding whether Allen is liable under the concert-of-action theory. The Texas Supreme Court has stated that, "whether such a theory of liability is recognized in Texas is an open question." *Juhl v. Airington,* 936 S.W.2d 640, 643 (Tex.1996). A version of the theory has been articulated by Professor Keeton as follows:

> All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 46, at 323 (5th ed.1984).

The *Restatement (Second) of Torts* also incorporates this principle, imposing liability on a person for the conduct of another which causes harm. Section 876 states:

§ 876 Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

2. This particular fact is derived from the following summary judgment evidence:

> In his affidavit, Allen stated: "Sometime before 7:00 p.m., I asked [Faggard] to take me home."

In Allen's deposition the following exchange occurred:

Q. Prior to the time of this accident—and according to the police report or the accident report filled out by the police, the accident occurred at about 6:30 in the evening. Does that comport with your recollection?

A. I believed it was at 6:45. It was closer to 7:00 p.m.

Q. Than 6:30?

A. Yes, because I remembered I had to be home at that time.

Q. You had to be home by when?

A. 7:00 o'clock.

Q. Why?

A. My parents wanted me to come home because that's when they planned to eat.

. . . .

Q. Okay. And you simply asked him if he would give you a lift home, right?

A. Yes, I needed to be home. That's when they wanted me home to eat, so I—

. . . .

Q. When you were at [Faggard's] house, did you make any attempts to find some other way home besides [Faggard] driving you home?

A. No.

Q. His driving you home was fine with you?

A. Yes, it was. I knew, you know, I needed to be there at 7:00 o'clock, so—

Q. And he could get you there?

A. Yes. Well, I thought he could.

3. Allen gave somewhat conflicting answers in his deposition concerning his sobriety. At one point in the deposition, Allen stated that he was not intoxicated. However, Allen later stated: "They [Allen's parents] had known me to drink before, but, you know, I don't usually come home drunk or drinking. I usually don't do that, and I did that day."

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) OF TORTS § 876 (1977).

Gail Shinn argues that the facts of this case fall under section 876(b). Subsection (b) imposes liability not for an agreement, but for substantially assisting and encouraging a wrongdoer in a tortious act. *Juhl*, 936 S.W.2d at 644. This subsection requires that the defendant have "an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Juhl*, 936 S.W.2d at 644 (quoting *Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (D.Mass.1981)).

**Substantial Assistance or Encouragement**

Comment d to section 876 lists five factors that can be relevant to whether the defendant substantially assisted the wrongdoer. These include: (1) the nature of the wrongful act; (2) the kind and amount of the assistance; (3) the relation of the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendant's state of mind. RESTATEMENT (SECOND) OF TORTS § 876 cmt. d (1977); *see Juhl*, 936 S.W.2d at 644.

**1. Nature of the Wrongful Act**

The purpose of the concert-of-action theory is to deter antisocial or dangerous behavior that is likely to cause serious injury or death to a person or certain harm to a large number of people. *Juhl*, 936 S.W.2d at 644–45. It is commonly recognized that driving while intoxicated is an antisocial and dangerous behavior, likely to cause serious injury or death to a person.

**2. The Kind and Amount of the Assistance**

Gail Shinn relies on *Cooper v. Bondoni*, 841 P.2d 608 (Okla.Ct.App.1992), to support her position. The court in *Cooper* recognized that the non-acting person must give *substantial* assistance or encouragement to the tortfeasor in order to affix Section 876 liability. *Id.* at 612 (emphasis added). There is no evidence Allen purchased the beer, ordered the beer, paid for the beer, encouraged Faggard to consume the beer, or encouraged Faggard to drive recklessly. Allen asked for a ride home. *See Clayton v. McCullough*, 448 Pa.Super. 126, 670 A.2d 710 (Pa.Super.Ct.1996).[4] Allen's request was gratuitous. There is no evidence that Faggard's decision to drive in an intoxicated condition was more than his alone.

**3. Relation of the Parties**

There is no special relationship between Allen and Faggard, such as an employee/employer relationship, that would place one party in a position of control over the other. Allen and Faggard were just acquaintances who decided to "hang out" one afternoon.

**4. Presence or Absence of the Defendant**

4. Although we are not bound by out-of-state decisions, we find the *Clayton* case persuasive. In *Clayton*, a pedestrian was killed by a vehicle driven by Wanda Steinhoff. *Clayton*, 670 A.2d at 711. Steinhoff and Rebecca McCullogh consumed alcohol at a lounge for four hours. Steinhoff was carrying a drink when the two women left the lounge. *Id.* McCullough requested that Steinhoff drive her to her destination, but later asked to drive because McCullough thought Steinhoff was too intoxicated. *Id.* Steinhoff refused McCullough's request to drive. *Id.* As Steinhoff drove, McCullough warned Steinhoff to avoid Fred Herrod. *Id.* Nevertheless, Steinhoff hit Herrod. *Id.*

Herold's administratrix, Virginia Clayton, contended *inter alia* that liability should be im-

posed on McCullough under section 876(b). *Id.* at 713. The court disagreed stating:

Clearly we are not bound by section 876(b) of the Restatement 2d, as it has not been adopted by the Pennsylvania Supreme Court. Assuming we were required to analyze Clayton's claim pursuant to section 876(b), there would be no duty imposed upon McCullough to guard against harm to a third person such as Clayton. While McCullough arguably was aware that Steinhoff's conduct constituted a breach of Steinhoff's duty, there are no factual averments in the complaint to indicate that McCullough gave "substantial assistance or encouragement to [Steinhoff] so to conduct [her]self."

*Id.*

Although we are not bound by out-of-state decisions, we find *Olson v. Ische*, 343 N.W.2d 284 (Minn.1984), informative on this issue. In *Olson*, the court held that "the mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." *Id.* at 289 (citing *Stock v. Fife*, 13 Mass.App.Ct. 75, 430 N.E.2d 845, 849 n. 10 (Mass.App.Ct.1982) (quoting WILLIAM LLOYD PROSSER, HANDBOOK OF THE LAW OF TORTS § 46, at 292 (4th ed.1971)). It is uncontroverted that Allen was riding in Faggard's car as a passenger when the accident occurred.

### 5. Defendant's State of Mind

 The summary judgment evidence shows Allen stated he did not think Faggard was intoxicated. While a fact issue exists as to whether Allen had knowledge that Faggard was intoxicated, that issue alone does not create a fact issue as to whether Allen substantially assisted or encouraged Faggard. Rather, Allen's state of mind is merely one of five factors that can be relevant to whether Allen substantially assisted Faggard. *See Juhl*, 936 S.W.2d at 644.

In reviewing the summary judgment evidence in the context of the above five factors, we conclude Gail Shinn did not raise a material fact issue that Allen substantially assisted or encouraged Faggard in operating the vehicle.

### Out–of–State Cases

Gail Shinn additionally relies on three out-of-state cases to support her position. All three of these cases, however, are factually distinguishable. In *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380, 383 (W.Va.1987), the complaint alleged that all of the passengers were actively engaged in providing alcohol and marijuana to the driver both before and during the trip and knew that the driver was intoxicated. *Id.* In *Cooper v. Bondoni*, the driver and the passengers had all been drinking prior to getting into the car. 841 P.2d at 608–09. According to the driver, everybody in the car encouraged and urged him to violate the law and pass a pickup in a no passing zone. In *Aebischer v. Reidt*, 74

Or.App. 692, 704 P.2d 531, 532 (Or.Ct.App. 1985), the passenger contributed equally to the purchase of additional marijuana and kept refilling the "bong" which the driver continued to grab from the passenger. *Id.* All of these cases are distinguishable in that the assistance or encouragement to commit the wrongful act in these cases was more direct, ongoing, and apparent than the present case.

### Conclusion

In reviewing the above factors in the context of the summary judgment standard of review, we conclude that the evidence conclusively disproves that Allen breached the concert-of-action theory of duty to Gail Shinn.

We overrule point of error one.

The judgment is affirmed.