Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00306-CV

Esmeralda **MARTINEZ**,
Appellant

v.

**FORD MOTOR CREDIT COMPANY**; Ford Motor Credit Company, LLC; Ford Motor Credit
In Its Assumed or Common Name,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-12501
Honorable Michael P. Peden, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 29, 2012

AFFIRMED

Esmeralda Martinez sued Ford Motor Credit Company, Ford Motor Credit Company,

LLC, and Ford Motor Credit in its Assumed or Common Name ("Ford Credit") for injuries she

suffered in an automobile accident. The trial court granted Ford Credit's no-evidence motion for

summary judgment. We affirm.

**BACKGROUND**

At the time of her automobile accident, Martinez was driving a 1998 Ford Explorer originally sold by a Ford dealership in Baytown, Texas, to Sam McCall. Ford Credit loaned the purchase money to McCall and had a lien on the Explorer. After the Explorer was involved in an accident, Ford Credit repossessed the vehicle. Ford Credit then gave the Explorer to San Antonio Auto Auction to sell the vehicle.

In July 2000, Barnes Auto Sales ("Barnes") purchased the Explorer at an auction. Barnes applied for a certificate of title with an attached affidavit of repossession executed by Ford Credit. Barnes then performed a "tail clip" on the Explorer, a procedure that cuts off the damaged rear portion of the vehicle body and replaces it with the back end of another matching vehicle. It is undisputed that Ford Credit played no role in these repairs and had no further involvement with the Explorer after it was sold at auction.

Martinez purchased the Explorer in 2000. In 2006 she was involved in an accident when one of the Explorer's tires had a blowout that caused her to collide with another vehicle. Following the accident, Martinez sued Ford Credit, alleging it was negligent, negligent per se, and grossly negligent because it sold the Explorer with clear title and failed to apply for a salvage or nonrepairable title. She asserted Ford Credit violated Chapter 501 of the Texas Transportation Code, referred to as the Certificate of Title Act ("Act"). Martinez also alleged Ford Credit aided and abetted Barnes in the breach of its duty to put her on notice of the prior accident and repair history of the Explorer. Martinez sought damages for the injuries she suffered in the 2006 accident.

Ford Credit filed a no-evidence motion for summary judgment and asserted a violation of the Act does not give rise to a personal cause of action. Ford Credit also asserted Martinez had

(1) no evidence to support the duty, breach, and causation elements of her negligence and negligence per se claims; (2) no evidence that Ford Credit aided and abetted Barnes in any unlawful course of conduct; and (3) no evidence of gross negligence. The trial court granted the motion and Martinez appeals.

## STANDARD OF REVIEW

When filing a no-evidence motion for summary judgment, the movant must specifically challenge the evidentiary support for an element of a claim or defense. TEX. R. CIV. P. 166a(i) cmt. (1997). Once the movant files a no-evidence motion for summary judgment, the respondent has the burden to produce summary judgment evidence raising a genuine issue of material fact on the challenged element. *Id*.; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). However, the non-movant is not required to marshal its proof; she need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). We view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

## DISCUSSION

Martinez pled Ford Credit was negligent and negligent per se because it failed to surrender the Explorer's title and apply for a nonrepairable vehicle title or salvage title, sold the Explorer with a clear title, and failed to warn about damage, repair history, and the nature and scope of repairs and modifications of the Explorer. Martinez also pled Ford Credit was negligent per se for violating the Act. On appeal, Martinez asserts she is not seeking to recover damages under a private cause of action for Ford Credit's violation of the Act, but is asserting only a

negligence per se claim based on the Act. Martinez argues that a person who sells a salvage or non-repairable vehicle without surrendering the regular title and applying for a salvage or non-repairable title violates section 501.0918[1] of the Act and is liable for injuries that subsequent purchasers suffer. Martinez contends section 501.0918 set the standard of reasonable conduct in 2000 and a defendant who violated the statute was negligent.

"Negligence per se is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person." *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978); *see Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001). "[T]o prove negligence per se, one must prove the unexcused violation of a penal standard." *Perry v. S.N.*, 973 S.W.2d 301, 304–05 n. 4 (Tex. 1998) (citing *So. Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973)). However, "the adoption of criminal statutes into tort law is a matter of judicial discretion." *Id.* "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Id.* at 305. "In determining whether a penal statute[2] creates an appropriate standard of care, we may consider whether the adoption of such a standard would be inconsistent with legislative intent." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) (footnote not in original). When determining the purpose of a statute and legislative intent, "we look to the language of the statute, as well as its legislative

---

[1] Section 501.0918 was repealed in 2003. Act of May 8, 1997, 75th Leg., R.S., ch.165, § 30.43 (a)(d), 1997 Tex. Gen. Laws 600, 603, repealed by Act of June 1, 2003, 78th Leg., R.S., ch. 1325, § 17.09(1), 2003 Tex. Gen. Laws 4995. The parties agree the repealed statute was the effective statute when Ford Credit sold the vehicle to Barnes in 2000.

[2] Section 501.102 prescribes criminal penalties for various acts including knowingly selling a salvage motor vehicle in violation of subchapter 501 or knowingly failing to surrender a regular title after the person knows the vehicle is either nonrepairable or a salvage vehicle. TEX. TRANSP. CODE ANN. § 501.102 (d)(e)(West Supp. 2011). If the defendant has had two or more offenses then the offense is a state jail felony. *Id.*

history, the objective sought, and the consequences that would flow from alternate constructions." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000).

The Act was originally passed in 1939 and the legislative history "reflects that the purpose of the Act was to replace the previous method of transferring vehicles by bill of sale with a Certificate of Title Act administered by one central statewide agency." *Drake Ins. Co. v. King*, 606 S.W.2d 812, 815 (Tex. 1980); *see also First Nat'l Bank of El Campo v. Buss*, 143 S.W.3d 915, 919 (Tex. App.—Corpus Christi 2004, pet. denied). "The change was believed necessary to prevent the sale of stolen vehicles and to protect a lienholder's security interest from defeasance." *Drake Ins. Co.*, 606 S.W.2d at 815 (citing Couch, Commentary on the Texas Certificate of Title Law (formerly art. 1436-1), TEX. PENAL CODE, Vol. 3, pp. XII-XXXIX (Vernon 1953)).

Section 501.003[3] of the Act provides:

> This chapter shall be liberally construed to lessen and prevent:
>
> (1) the theft of motor vehicles;
> (2) the importation into this state of and traffic in motor vehicles that are stolen; and
> (3) the sale of an encumbered motor vehicle without the enforced disclosure to the purchaser of a lien secured by the vehicle.

TEX. TRANSP. CODE ANN. § 501.003 (West Supp. 2012). Section 501.0918 required a person who owned a late model salvage motor vehicle or a nonrepairable motor vehicle that had not been issued a salvage or nonrepairable certificate of title to surrender the assigned certificate of title for the vehicle and obtain either a salvage or nonrepairable title. Act of May 8, 1997, 75th

---

[3] The version of section 501.003 in effect when the Explorer was repossessed and resold is identical to the version in effect in 2012 except the title was changed from "Construction" to "Purpose." *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165 § 1, 1995 Tex. Gen. Laws 1025, 1468, amended by Act of May 29, 2011, 82nd Leg., R.S., ch. 1296 § 2, 2011 Tex. Gen. Laws ____).

Leg., R.S., ch.165, § 30.43 (a)(d), 1997 Tex. Gen. Laws 327, 600, 603, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 1325, § 17.09(1), 2003 Tex. Gen. Laws 4884, 4995.

Even in light of the clearly stated purpose of the Act, Martinez claims section 501.0918 was designed to protect people who later bought the vehicle and to make sure vehicles were in a safe condition. She also contends the Act's salvage and nonrepairable title provisions cannot be "squared" with the purposes stated in section 501.003. Martinez asserts the Act does not state that the purposes set out in section 501.003 are the only purposes of the Act and argues the "point" of section 501.0918 was to make sure that "downstream" purchasers would know through certificate of title, about the vehicle's prior damage.

We cannot rewrite the statute's purposes and we do not infer from the statute's language the legislature intended the purposes of the Act to be anything other than what was expressly stated. The statute was enacted to prevent theft, the importation of stolen vehicles, and the sale of encumbered vehicles. *See* TEX. TRANSP. CODE ANN. § 501.003 (West Supp. 2012). Martinez does not belong to the "class that the statute was intended to protect" and her "injuries are not the type the statute was designed to prevent." *Perry*, 973 S.W.2d at 305. Accordingly, repealed section 501.0918 does not give rise to a negligence per se claim.

Martinez also contends this court's decision in *Leal v. State Farm Mut. Auto. Ins. Co.*, No. 04-09-00308-CV, 2010 WL 962286 (Tex. App.—San Antonio March 17, 2010, no pet.) (mem. op.), recognized that a violation of the Act can result in tort liability. Martinez asserts that in *Leal* we held that the court "would not impose any 'additional' duty' beyond those imposed by the Certificate of Title Act and that a seller who complied with the statute 'had no further duty to inspect or warn subsequent purchasers.'" We disagree with Martinez's contention. In *Leal*, State Farm owned a vehicle that it sold for salvage at an auction. *Id.* at *1. The plaintiff's decedent

was killed in an automobile accident while riding as a passenger in the vehicle. *Id*. The plaintiff alleged State Farm had a duty to inspect and warn of the salvage titled vehicle's safety and suitability for rebuilding, reconditioning, or repair. *Id*. at \*3. In the trial court, the parties stipulated that State Farm had complied with the Act's requirements. *Id*. Noting the parties' stipulation we determined State Farm was only required to obtain a salvage title and did not have to inspect or warn subsequent purchasers of the car's salvage condition. *Id.* We held State Farm did not owe a duty to the plaintiffs. *Id.* at \*4. The question of whether the requirements of the Act to obtain a salvage title could form the basis of a negligence or negligence per se claim was not before the court. Our decision in *Leal* does not support Martinez's negligence and negligence per se claims.

**AIDING AND ABETTING**

Martinez contends Ford Credit aided and abetted Barnes in the breach of its duty to put her on notice of the prior accident and repair history of the Explorer. Ford Credit moved for summary judgment, asserting there was no evidence it aided or abetted Barnes or that such aiding and abetting proximately caused Martinez's injuries. The crux of Martinez's claim is that had Ford Motor sold the Explorer with a salvage or nonrepairable title, the vehicle "may well have" been dismantled and not put into the stream of commerce. Martinez claims that by failing to obtain a salvage or nonrepairable title and selling it with a "clean" title, Ford Credit failed to warn of the vehicle's condition.

The aiding and abetting theory of liability is referred to as "concert of action." *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). The supreme court has noted "whether such a theory of liability is recognized in Texas is an open question." *Id*. In *Juhl,* the court set out two descriptions of the theory, one by Prosser and Keeton and the other from the Restatement

(Second of Torts). *Juhl*, 936 S.W.2d at 643. Prosser and Keeton describe the concert of action theory as follows:

> All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.

*Id.* (quoting W. PAGE KEETON AND D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 46, at 323 (5th ed. 1984)). The Restatement provides liability can be imposed on a person for the conduct of another that causes harm if the defendant:

> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 876 (1977)).

The *Juhl* court stated, "if we were to adopt § 876(a) we would require allegations of specific intent, or perhaps at least gross negligence, to state a cause of action." *Juhl*, 936 S.W.2d at 644. Specific intent requires an agreement to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; neither proof of negligence nor proof of intent to engage in the conduct that resulted in the injury is enough. *See id.* Here, there is no evidence Ford Credit had an agreement with Barnes for Barnes to breach any duty it owed to Martinez.

Martinez asserts that by failing to obtain a salvage or nonrepairable title, Ford Credit assisted Barnes in violating the sections of the Act dealing with salvage and nonrepairable vehicles. The only evidence Martinez points to is testimony from June Barnes, title documents, and the affidavit of Richard Diklich. Barnes described the process to acquire title to a vehicle. She also testified she would not have purchased the Explorer if it had had a salvage title. The

affidavit of Diklich discusses the value of the Explorer, how to estimate costs of repair, and the costs to repair the Explorer. None of this evidence is evidence of specific intent or gross negligence to support liability under subsection (a).

In *Juhl*, the court noted subsection (b) of section 876 requires "substantial assistance" and knowledge that the tortfeasor's conduct constitutes a breach of duty. *Id.* Therefore, under subsection (b), unlawful intent is required, "i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Id.* (quoting *Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035 (D. Mass.1981)). The *Juhl* court also noted that the comments to the Restatement listed five factors to consider in determining whether "substantial assistance" had been provided: (1) the nature of the wrongful act; (2) the kind and amount of the assistance; (3) the relation of the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendants state of mind. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 876 cmt. d). The purpose of the concert of action theory "is to deter antisocial or dangerous behavior." *Id.* As noted by the *Juhl* court, concert of action cases have involved behavior such as drag racing, group assault, reckless driving, and assisting a driver in becoming intoxicated. *See id.* at 644–45; *see also Shinn v. Allen*, 984 S.W.2d 308, 311 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (driving while intoxicated is antisocial and dangerous behavior likely to cause serious injury or death).

Martinez's evidence does not demonstrate that Ford Credit aided and abetted Barnes in breaching any duty it might owe to Martinez. The failure to obtain a salvage or nonrepairable title did not amount to "substantial assistance" in a "tortious act" as discussed in *Juhl*, nor the type of "highly dangerous, deviant, or anti-social group activity" necessary to impose liability under the reasoning of *Juhl*. *See Juhl*, 936 S.W.2d at 644–45.

We affirm the trial court's judgment.[4]

Steven C. Hilbig, Justice

---

[4] We need not address Martinez's issue on exemplary damages because we have held Martinez's negligence per se claim fails.